**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOYCE LYNN BOBRYCKI MCCLUNG**, *individually and as executrix of the estate of Joseph R. McClung, Jr.*, | |
| **Plaintiff,** | Civil Action No. 16-2301 (ES) (SCM) |
| **v.** | **OPINION** |
| **3M COMPANY, *et al.*,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court are plaintiff Joyce Lynn Borbrycki McClung's ("Plaintiff") Objections to two Reports and Recommendations ("R&Rs") issued by the Honorable Magistrate Judge Steven C. Mannion. Plaintiff objects to Judge Mannion's R&R recommending that (i) the Court deny defendant General Electric Company's ("General Electric") motion to dismiss for lack of personal jurisdiction; and (ii) the Court sever the claims against General Electric and transfer them to the Southern District of Virginia (D.E. No. 147 (the "GE R&R")). (D.E. No. 150). Plaintiff also objects to Judge Mannion's R&R recommending that (i) the Court deny defendant Boeing Company's ("Boeing") motion to dismiss for lack of personal jurisdiction; and (ii) the Court sever the claims against Boeing and transfer them to the District of Delaware (D.E. No. 148 (the "Boeing R&R")). (D.E. No. 151). The Court has considered the relevant submissions and decides this matter on the papers. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, the Court DENIES Plaintiff's Objections and ADOPTS Judge Mannion's recommendations.

## I.    Background

The Court assumes the parties' familiarity with the facts and procedural history of this case, which Judge Mannion detailed in the R&Rs.  (*See* GE R&R at 2–5; Boeing R&R at 2–5).  Therefore, the Court will discuss relevant facts only in the analysis below.

## II.    Legal Standard

### A.    Objections to a R&R

"When a litigant files an objection to a Report and Recommendation, the district court must make a *de novo* determination of those portions to which the litigant objects."  *Leonard Parness Trucking Corp. v. Omnipoint Commc'ns, Inc.*, No. 13-4148, 2013 WL 6002900, at *2 (D.N.J. Nov. 12, 2013) (citing 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2)).  "'De novo review' means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered."  Charles Alan Wright, *et al.*, 12 Fed. Prac. & Proc. § 3070.2 (3d ed. 2018).  Upon conducting de novo review, the district judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

### B.    Federal Rule of Civil Procedure 12(b)(2)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence.  *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).  "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its

favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citations omitted). Still, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the Plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (citation and internal quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984).

A federal court has jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which the court sits, so long as the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 4(e); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The New Jersey Long Arm Rule permits the assertion of in personam jurisdiction as far as it is constitutionally permissible under the Due Process Clause. N.J. Court Rule 4:4–4; *Shushan*, 954 F.2d at 145. In turn, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant, the forum, and the litigation . . . ." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). That is, the Due Process Clause requires the plaintiff to show that the nonresident defendant "has purposefully directed its activities toward the residents of the forum state, . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

## III.    Discussion

Both General Electric and Boeing moved to dismiss Plaintiff's complaint for lack of personal jurisdiction.  (*See* D.E. Nos. 35 & 53).  Judge Mannion determined that Plaintiff had failed to establish that the Court had personal jurisdiction over either General Electric (*see* GE R&R at 8 & 11) or Boeing (*see* Boeing R&R at 9 & 10).  Rather than dismiss these claims, Judge Mannion determined that the interest of justice would be better served by (i) severing and transferring the claims against General Electric to the Southern District of West Virginia (GE R&R at 15) and (ii) severing and transferring the claims against Boeing to the District of Delaware (Boeing R&R at 13).  Plaintiff filed timely objections to each R&R.

### A.    The GE R&R

#### 1.    Personal Jurisdiction Over General Electric

Plaintiff's Opposition to General Electric's motion to dismiss asserted that the Court had both general and specific personal jurisdiction over General Electric.  (*See* D.E. No. 45 at 7).  Judge Mannion found that Plaintiff had failed to prove either theory of jurisdiction.  (GE R&R at 8 & 11).  Although Plaintiff focuses her Objection on Judge Mannion's specific jurisdiction findings (*see* D.E. No. 150-1 at 10), the Court addresses both theories.

##### a.    General Jurisdiction

General jurisdiction exists over a corporate defendant where its "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In *Daimler*, the Supreme Court explained that a corporation is "at home" in its place of "incorporation and principal place of business," and therefore, those

4

locations serve as the paradigm bases for general jurisdiction. 571 U.S. at 137. As a result, "it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) (quoting *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016)) (alterations in original).

The GE R&R found that "General Electric's activities in New Jersey are not sufficient to maintain an exercise of general jurisdiction" because "New Jersey is neither General Electric's place of incorporation nor principal place of business. . . ." (GE R&R at 8–9). Further, the GE R&R rejected Plaintiff's contention that general jurisdiction existed due to General Electric's sale of microwaves and other products in New Jersey, because "[a] corporation is not amenable to suit in every state that it has sizeable sales." (*Id.* at 9 (citing *Daimler*, 571 U.S. at 135–40)). Lastly, the GE R&R also rejected Plaintiff's arguments that general jurisdiction exists because General Electric had previously participated in lawsuits in New Jersey (*id.* at 9 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)), and because General Electric has a state-designated representative to receive service in New Jersey (*id.* at 10–11 (citing *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 174 (D.N.J. 2016)).

Plaintiff does not directly object to these findings, and after carefully reviewing the parties' submissions on this issue, the Court finds no reason to disturb Judge Mannion's well-reasoned analysis. Consequently, the Court adopts this portion of the GE R&R.

**b.    Specific Jurisdiction**

Specific jurisdiction arises from "an affiliation between the forum and the underlying controversy," and a district court exercising specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*,

5

564 U.S. at 919).  For specific jurisdiction to exist, a district court must determine that (i) the defendant "purposefully directed its activities at the forum," (ii) the litigation "arises out of or relates to at least one of those activities," and (iii) the exercise of jurisdiction would "otherwise comport with fair play and substantial justice."  *O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up).

With respect to the second prong, the Court of Appeals has instructed that the analysis should begin with but-for causation.  *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 187 (3d Cir. 2011) (citing *O'Connor*, 496 F.3d at 322).  This requires a showing that "the plaintiff's claim would not have arisen in the absence of the defendant's contacts."  *O'Connor*, 496 F.3d at 319.  However, "[t]he animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable."  *Id.* at 322 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)).  As such, specific jurisdiction "requires a closer and more direct causal connection than that provided by the but-for test" and a finding of but-for causation does not end the analysis.  *Id.* at 323.  Rather, "[t]he inquiry is fact-sensitive, and should 'hew closely to the reciprocity principle upon which specific jurisdiction rests.'"  *Colvin*, 417 F. App'x at 187 (quoting *O'Connor*, 496 F.3d at 323).

General Electric focused its specific personal jurisdiction argument on the second prong, (*see* D.E. No. 35-1 a 6; D.E. No. 48 at 3), and Judge Mannion found this element to be dispositive (*see* GE R&R at 11–14).

In her Objection, Plaintiff argues that the GE R&R applied the incorrect standard, disregarded the competent evidence, and resolved disputed issues of fact in favor of General Electric.  (*See* D.E. No. 150-1 at 7 & 9).  The Court notes that although the GE R&R appears to apply the prima facie standard (*see* GE R&R at 14), Judge Mannion also concluded that Plaintiff

"failed to meet her 'burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction.'" (*Id.* at 13 (citing *Walburn v. Rovema Packaging Machines, L.P.*, No. 07-3692, 2008 WL 852443, at *4 (D.N.J. Mar. 28, 2008)). The Court finds, however, that even if the GE R&R incorrectly applied the preponderance standard, the error was harmless because Plaintiff simply failed to make a prima facie showing of specific jurisdiction. Accordingly, the Court modifies this portion of the GE R&R to the extent it relied on the preponderance standard, but adopts Judge Mannion's ultimate conclusion that Plaintiff failed to establish a case of specific personal jurisdiction over General Electric.

### i.    Plaintiff Failed to Establish A Prima Facie Case of Personal Jurisdiction

The Court finds that Plaintiff's pleadings and briefing failed to establish "with reasonable particularity" sufficient jurisdictional facts to show a prima facie case of specific personal jurisdiction. *See Farino*, 960 F.2d at 1223 (quoting *Provident Nat. Bank*, 819 F.2d at 437). As Judge Mannion explained, the Amended Complaint provides only conclusory allegations that General Electric, like all other defendants, "was doing business in the State of New Jersey" and that General Electric "'mined, manufactured, sold, purchased, marketed, installed, and removed asbestos or asbestos containing products,' which came into contact with Mr. McClung." (*See* GE R&R at 11 (quoting D.E. No. 81 ¶ 6)). The Amended Complaint then "cites a litany of claims against General Electric and the other Defendants, without differentiating among them, but does not allege that any of these acts occurred in New Jersey." (*Id.*). While the Court must take Plaintiff's factual pleadings as true, the Court need not accept bare legal conclusions or vague generalizations. *See, e.g.*, *Pacheco v. Padjan*, No. 16-3625, 2017 WL 3217160, at *3 (E.D. Pa. July 28, 2017); *accord Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.

2001); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

Plaintiff's briefing on the issue was equally deficient.  The section discussing specific jurisdiction in Plaintiff's Opposition brief contains no citations to the record. (*See* D.E. No. 45 at 12–15).  Rather, Plaintiff spends almost four pages discussing the different standards developed around the relatedness element of specific jurisdiction.  (*See id.*).  Plaintiff then proceeds to request that the Court apply the substantial connection test (*id.* at 15), ignoring that it is "not the law in this circuit," *see O'Connor*, 496 F.3d at 321.  As Judge Mannion correctly explained, the substance of Plaintiff's argument is constrained to a single conclusory sentence devoid of any citations to "affidavits and other competent evidence which could establish specific jurisdiction."  (GE R&R at 12 (citations omitted); *see also* D.E No. 45 at 15).  Moreover, although the parties had an opportunity to provide supplemental briefing on this issue, Plaintiff chose to largely rely on her deficient Opposition brief while reiterating "the same conclusory allegations without reference to specific evidence."  (*See* GE R&R at 12; *see also generally* D.E. No. 139).[1]

Thus, it appears that Plaintiff expected Judge Mannion and the Court to incorporate by reference her statement of facts, wade through the entire record to find supporting evidence, and to then formulate and flesh out Plaintiff's skeletal arguments for her.  In other words, Plaintiff would have the Court draft her Opposition for her.  But it is not the responsibility of the Court to either formulate arguments for a party or to search the record for evidence to support a party's arguments, particularly one represented by sophisticated counsel.  *See, e.g.*, *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017) ("First, it is the responsibility of neither the District Court nor this Court to make the parties' arguments for them . . . ."); *United States v.*

---

[1]    In fact, aside from stating that Plaintiff will "rely on Plaintiff's opposition submitted as Document 59" in response to Boeing's motion to dismiss and "on documents 45 and 96" in response to General Electric's motion to dismiss, the only other citation to the record in the supplemental brief is a general citation to the amended complaint. (*See* D.E. No. 139 at 3 (citing D.E. No. 81)).

*Lavanture*, 74 F. App'x 221, 225 (3d Cir. 2003) (observing that the court "must not 'abandon [its] proper role and assume that of an advocate'" (quoting *United States v. Wilensky*, 757 F.2d 594, 597 (3d Cir. 1985)); *Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994) (["District judges] need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the *burden on the litigants*, but also because their time is scarce." (Easterbrook, J.) (emphasis added)); *accord Dean v. Daimler Chrysler Life, Disability and Healthcare Benefits Program*, 439 F. App'x 265, 266 (4th Cir. 2011); *United States v. Filani*, 74 F.3d 378, 385 (2d Cir. 1996).

It is, however, Plaintiff's sole burden to prove that this Court can exercise personal jurisdiction over General Electric. *See D'Jamoos ex rel. Estate of Weingeroff*, 566 F.3d at 102; *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990). That burden requires Plaintiff, *not the Court*, to show how Plaintiff's claims arise out of or relate to General Electric's New Jersey contacts. *See O'Connor*, 496 F.3d at 317. In the context of this case, that requires Plaintiff, *not the Court*, to show how General Electric's New Jersey contacts were at the very least a but-for cause of the injuries Mr. McClung sustained while stationed in Germany. *See id.* at 322. And though at this stage that burden requires only a prima facie showing, Plaintiff, *not the Court*, was required to provide citations to "sworn affidavits or other competent evidence," i.e., "actual proof," *Time Share Vacation Club*, 735 F.2d at 66 n.9, that show the necessary minimum contacts "with reasonable particularity," *Farino*, 960 F.2d at 1223. *See DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for DeShields's claim existed in the record, it was incumbent upon her to direct the District Court's attention to those facts.").

Unquestionably, the Amended Complaint and briefs Plaintiff presented before Judge Mannion in response to General Electric's motion to dismiss fell short of this burden. Therefore,

on this ground alone Plaintiff failed to establish a prima facie case for specific personal jurisdiction. *See United States v. Slade*, 980 F.2d 27, 31 (1st Cir. 1992) ("A litigant cannot ignore her burden of developed pleading and expect the district court to ferret out small needles from diffuse haystacks."); *Zimmermann v. United States Nat'l Labor Relations Bd.*, 749 F. App'x 148, 150 (3d Cir. 2019) ("We decline to root through the record below and make Zimmerman's case for him." (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) for the proposition that "Judges are not like pigs, hunting for truffles buried in briefs" and that a "skeletal argument" does not preserve a claim)). With this reality in mind, the Court finds it incredulous that Plaintiff now complains that Judge Mannion "disregarded the competent evidence" (D.E. No. 150-1 at 7) and "cite[d] just three of the many pieces of evidence" (*id*. at 11), when Plaintiff's argument on the specific jurisdiction issue was limited to a conclusory sentence devoid of any citations to said evidence (*see* D.E. No. 45 at 15).

But even assuming Judge Mannion, or the Undersigned, were required to draft Plaintiff's Opposition for her, Plaintiff still failed to make a prima facie showing of specific personal jurisdiction. As explained above, the Amended Complaint provides no factual allegations that would connect Mr. McClung's injury with General Electric's activity in New Jersey. Instead, the Court is left to rely on Plaintiff's entire statement of facts in her Opposition brief. There, Plaintiff specifically asserted that Mr. McClung was exposed to asbestos through dust-covered blankets he observed "*on* the [F-4 aircraft][2] engine." (D.E. No. 45 at 4 (citing D.E. No. 45-6 at 23:20-24:6) (emphasis added)).[3] Mr. McClung testified that the blankets he observed on the F-4 aircraft

---

[2]      The F-4 Phantom aircraft was a twin-engine, two seat, long-range supersonic jet fighter/bomber, interceptor, and reconnaissance aircraft developed and manufactured by Boeing's predecessor beginning in the 1950's. (D.E. No. 53-1, Ex. E ¶ 6). General Electric manufactured its J79 engine pursuant to government procurement contracts. (D.E. 53-1, Ex. E. ¶¶ 6–9).

[3]      The Court notes that Plaintiff included a footnote claiming that "Mr. McClung also identified other products used on the GE engines independently proven to be asbestos containing products." *See* (D.E. No. 45 at 4 n.5). But

engines covered "three quarters to most of the [J79] engine." (D.E. No. 48-2 at 291:4–6; *see also* D.E. 48-1 ¶ 9).

Plaintiff asserted that on a prior case General Electric's corporate representative testified that "Johns Manville . . . manufactured *these* blankets in New Jersey specifically for the J79 engine and that the blankets contained asbestos." (D.E. No. 45 at 4 (citing D.E. No. 45-8 at 127:11–128:4 (emphasis added); *see also* D.E. No. 150 at 4 (asserting the same)). Plaintiff also pointed to other documentary evidence to assert that "General Electric worked hand-in-hand with Johns Manville in New Jersey to develop the *exact* asbestos containing product McClung testified he was exposed to." (*Id.* at 2 (emphasis added); *see also id.* at 4–6).

However, General Electric explained, with a supporting sworn affidavit and other competent evidence, that the insulation blankets incorporated into the J79 engine were "relatively small insulation components" most of which "were internal to the J79 engine." (D.E. 48-1 ¶ 16 & Ex. C). Further, the only external insulation blanket provided by General Electric for the J79 engine "were the small metal-covered wraps that surrounded the nozzle actuators on the engine's afterburners," which bear no "resemblance to the large, draping external blankets that McClung described." (*Id.* ¶¶ 16–17 & Ex. D). In fact, General Electric explained that large insulation blankets like the ones described by Mr. McClung would have restricted airflow, prevented proper engine cooling, and rendered several hoses and other external components "less effective or ineffective." (*Id.* ¶¶ 12–13 & Exs. A & B).

By contrast, none of the evidence Plaintiff cited supports her assertions that the blankets

---

Plaintiff did not identify these products and did not cite to anything in the record to support this assertion. This skeletal footnote does not present or preserve a valid argument, *see United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008), and such unsupported assertions in a brief are simply neither factual allegations nor evidence, *see Wilson v. RIU Hotels & Resorts*, No. 10-7144, 2011 WL 3241386, at *3 (E.D. Pa. July 29, 2011) (citing *Peek v. Golden Nugget Hotel & Casino*, 806 F.Supp. 555, 558 (E.D. Pa. 1992)).

manufactured by Johns Manville were the same engine-sized blankets Mr. McClung observed on the F-4 airplane engines. (*See generally* D.E. Nos. 45-8, 45-9, 45-10 & 45-11). And despite having the opportunity to supplement the record and to provide supplemental briefing (*see* D.E. No. 139), Plaintiff provided no allegations or competent evidence to show that the engine-sized blankets Mr. McClung observed, and which Plaintiff asserted caused Mr. McClung's injury, were the same blankets Johns Manville produced. (*See generally* D.E. Nos. 45 & 139; *see also* D.E. Nos. 150 & 157). In other words, Plaintiff, through her counsel, *assumed* that the blankets Mr. McClung identified during his deposition are the same insulation blankets manufactured by Johns Manville. But a party's assumptions and unsupported references in a brief are not competent evidence.[4] *See Wilson*, 2011 WL 3241386, at *3 (citing *Peek*, 806 F.Supp. at 558); *see also Time Share Vacation Club*, 735 F.2d at 66.

In her Objection, Plaintiff argues that "[b]y focusing [ ] on . . . the precise size of the asbestos blankets" the GE R&R "mistakenly concludes the asbestos in the blankets could not cause Mr. McClung's illness . . . ." (D.E. No. 150-1 at 12 (arguing that the GE R&R "improperly invaded the province of the jury by making a factual determination on medical causation")). But this mischaracterizes the GE R&R and Judge Mannion's findings. Judge Mannion did not determine what caused Mr. McClung's injury; that question was not before the Court at all. Rather, His Honor simply found that the evidence provided by Plaintiff did not sufficiently show that Plaintiff's claims arise out of or are related to General Electric's New Jersey contacts. (*See* GE

---

[4]    In this respect, Plaintiff's argument that the GE R&R improperly resolved disputed facts in favor of General Electric is without merit. (*See* D.E. No. 150-1 at 9 & 14-15 (arguing that by accepting General Electric's evidence regarding the size of the blankets, the GE R&R resolved a disputed fact in favor of the defendant (citing *La Rose v. Sponco Manufacturing, Inc.*, 712 F. Supp. 455, 458 (D.N.J. 1989)); D.E. No. 157 at 4). While the Court must resolve factual disputes in favor of Plaintiff, Plaintiff must produce such facts and evidence in the first place. *See Miller Yacht Sales*, 384 F.3d at 101; *Time Share Vacation Club*, 735 F.2d at 66 & n.9. And because Plaintiff only offered an unsupported assumption in her brief about the source of the blankets she claimed harmed Mr. McClung, Plaintiff simply offered no fact for this Court to take as true. *See Wilson*, 2011 WL 3241386, at *3.

R&R at 13–14).

Later in her Objection Plaintiff retreats from her original argument, stating that the Court should disregard "Mr. McClung's recollection of the precise size of the blankets." (D.E. No. 150-1 at 14). Instead, Plaintiff now argues that Johns Manville "made asbestos-laden blankets for the J79 engine in New Jersey for General Electric, that Mr. McClung worked on those engines during his service to this country overseas, and that he was accordingly exposed to asbestos." (D.E. No. 157 at 4–5). In other words, Plaintiff now appears to argue that Mr. McClung's injury arose from his exposure to the engines themselves, not to the engine-sized blankets he identified in his deposition.

However, Plaintiff did not adequately raise this argument before Judge Mannion in either her Opposition or her Supplemental Brief. (*See generally* D.E. Nos. 45 & 139). It is axiomatic that a party who fails to properly assert an argument before the magistrate judge cannot raise it for the first time on an objection to an R&R. *See Anamdi v. Kean Univ.*, No. 15-2887, 2015 WL 5138648, at *3 (D.N.J. Aug. 31, 2015) (collecting cases). Particularly, "[c]ourts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion." *See McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 n.7 (1st Cir. 1991). Thus, "[a] party has a duty to put its best foot forward before the magistrate: to spell out its arguments squarely and distinctly." *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988). This duty extends to theories that *could have* been presented based on the existing record. After all, "[j]udges are not obliged to do a [party's] homework, searching *sua sponte* for issues that may be lurking in the penumbra of the motion papers. Thus, the raise-or-waive rule applies with full force when an appellant tries to present a new theory about why facts previously placed on record are determinative." *Slade*, 980 F.2d at 31; *accord Tri-M Grp.,*

*LLC v. Sharp*, 638 F.3d 406, 434 (3d Cir. 2011) (noting that litigants may not "jump from theory to theory like a bee buzzing from flower to flower" (quoting *United States v. Rose*, 538 F.3d 175, 180 (3d Cir. 2008)); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002).

Consequently, "the argument upon which [Plaintiff] belatedly places such stock could have been, but inexplicably was not, presented to the magistrate in the first instance. [Plaintiff] is not entitled to yet another nibble at this particular apple." *See Paterson-Leitch Co.*, 840 F.2d at 991; *Anamdi*, 2015 WL 5138648, at \*3 ("The reason for this rule is that 'the magistrate judge system was created to help alleviate the workload of the district judges, [and] it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an unfavorable recommendation-shift gears before the district judge.'" (quoting *Williams v. McNeil*, 557 F.3d 1287, 1291–92 (11th Cir. 2009)).

### ii. Plaintiff Still Fails to Make a Prima Facie Showing of Personal Jurisdiction

Even if this Court were inclined to accept this belated argument, Plaintiff still fails meet her burden of showing prima facie personal jurisdiction over General Electric, because the cited evidence does not support her argument.

For instance, Plaintiff asserts that "General Electric's corporate representative testified in a prior case that Johns Manville manufactured the blankets for the J79 engine in New Jersey, and that these blankets contained asbestos." (D.E. No. 150-1 at 12–13 (citing D.E. No. 150-9 at 127:11–128:4)). Plaintiff also asserts that "Johns Manville was the **sole** source of the asbestos blankets used in the J79 engine." (*See* D.E. No. 150-1 at 13 (citing D.E. No. 150-9 at 119:16–21) (emphasis in original)). Plaintiff argues that "[t]his testimony alone establishes a prima facie case for specific jurisdiction." (*Id.*; D.E. No. 157 at 3). But Plaintiff misses the point; the relevant

14

question to determine specific jurisdiction over a non-resident defendant is whether the defendant's own activities in the forum state are connected with the plaintiff's claims. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). As such, even if the cited testimony supported Plaintiff's assertions,[5] Johns Manville's New Jersey activity says little, if anything, about General Electric's contacts with New Jersey or whether any such contacts is a but-for cause of Plaintiff's claims. *See id.* In fact, one of Plaintiff's own exhibits (an internal Johns Manville correspondence dated October 2, 1974) specifically states that "[u]ntil about four weeks ago" a vendor named HITCO of Atlanta, Georgia, was "using 'Min-K' insulation material supplied by Johns Manville" and that HITCO "supplies insulation blankets for *all* [General Electric] engine programs." (D.E. No. 45-11 at 2 (emphasis added)). In other words, Plaintiff's own evidence appears to indicate that General Electric did not purchase the insulation blankets directly from Johns Manville in New Jersey, but rather, obtained them through a third-party vendor located in Georgia.

Plaintiff also cites to a 1969 letter from a General Electric engineer to Johns Manville.

---

[5]     Plaintiff overstates the helpfulness of this deposition testimony. For instance, to support the assertion that General Electric was the sole source of asbestos blankets, Plaintiff cites to this exchange:

Q.     Fourth paragraph down, it says GE has alternative vendors on most J79 parts. See that?
A.     Yes, sir.
Q.     Except 7000M29-P02, do you see that?
A.     Yes, sir.
Q.     Where J-M is presently the sole source, see that?
A.     Yes, sir.

(*See* D.E. No. 150-9 at 119:12–21). Notably, the witness is simply agreeing that a document contained language stating that Johns Manville "is presently the sole source" of part number 7000M29-P02; Plaintiff does not identify or provide a copy of this document. Further, nothing in the provided transcript or in this record explains what the questioning attorney meant by "presently." Assuming that this particular part contained asbestos (the witness stated that he did not know (*id.* at 119:23–24)), at best this testimony shows that some unknown document indicates that during some unknown period Johns Manville was the sole source of part number 7000M29-P02. Absent speculation, then, the Court is unable to conclude that this testimony is evidence that General Electric's contacts with New Jersey were a but-for cause of Mr. McClung's injury.

Largely all of the cited deposition testimony is equally conditioned on what certain documents (which Plaintiff has neither identified nor provided a copy of) state.

(D.E. No. 150-1 at 13 (citing D.E. No. 150-11)).  The General Electric engineer states that he "hand carried eight (8) tubing assemblies" to Johns Manville's plant for "insulation application to the hose section of the tubing on G.E. P. O. #17M25823," which were later installed "on an engine."  (D.E. No. 150-11).  But this letter does not refer to the J79 engine anywhere (*see id.*), and Plaintiff fails to show that these tubing assemblies pertain to a part of the J79 engine or that they even contained asbestos.  (*See* D.E. No. 150-1; *see also* D.E. No. 48-1 ¶ 15).  Without more, the Court is simply unable to determine that this particular contact between General Electric and New Jersey is connected to this action, let alone that it is a but-for cause of Plaintiff's claims.

Finally, Plaintiff cites to a 1966 letter from a General Electric engineer to the Johns Manville Aero-Space Division in New Jersey.  (D.E. No. 150-1 at 13 (citing D.E. No. 150-10).  General Electric's engineer stated that General Electric has received "insulation blankets P/N 7000M29P0l," which had been "successfully mocked up on J79-l0 engines."  (D.E. No. 150-10).  The letter proceeds to indicate that "several mistaken interpretations to the P/N 7000M29 drawing were uncovered," and provides proposed revisions for Johns Manville's approval.  (*Id.*).  This document does appear to suggest that on at least one occasion a General Electric engineer visited Johns Manville's New Jersey plant to make sure that one of the insulation blankets were properly manufactured.[6]

Assuming that this letter was enough to show but-for causation, that is merely the beginning, not the end, of the analysis.  *See O'Connor*, 496 F.3d at 322.  Plaintiff fails to address or show how General Electric's contacts with New Jersey were "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable" under the facts of this case.

---

[6]    Notably, General Electric's representative testified that each part of the J79 engine had to be specifically approved by the United States, and accordingly, any deviation would necessitate the Government's approval.  (*See* D.E. No. 150-9 at 149:15–20).

*See id.* at 323; (*see, e.g.*, D.E. No. 150-1 at 15 (concluding that "General Electric's procurement of asbestos-laden blankets caused Mr. McClung to be exposed to asbestos.  And with that, there is a 'connection between the forum and the specific claims at issue' sufficient to satisfy the relatedness requirement" (quoting *Bristol-Myers Squibb*, 137 S.Ct. at 1781)); *see also* D.E. No. 157).  Plaintiff has not provided any arguments or any case law on this issue, and thus once again skirts her burden; the Court declines to do Plaintiff's (i.e., her counsel's) work for her.  *See, e.g.*, *Schneider's Dairy, Inc. v. Serv. Pers. & Employees of Dairy Indus., Teamsters Local Union No. 205*, No. 13-1325, 2013 WL 6485367, at *2 n.1 (W.D. Pa. Dec. 10, 2013) ("[I]t is not the Court's job 'to research and construct legal arguments open to parties, especially when they are represented by counsel.'" (quoting *330 West Hubbard Rest. Corp. v. U.S.*, 203 F.3d 990, 997 (7th Cir. 2000)); *accord Zimmermann*, 749 F. App'x at 150; *Slade*, 980 F.2d at 31.

## 2.    Sever and Transfer to the Southern District of West Virginia

Judge Mannion determined that although the Court lacks personal jurisdiction over General Electric, "it is in the interest of justice not to dismiss the Amended Complaint, but instead, sever the claims against General Electric and transfer the case to the Southern District of West Virginia." (GE R&R at 15).  Plaintiff does not directly object to this portion of the GE R&R.  (*See generally* D.E. No. 150-1 & 157).  Rather, Plaintiff argues in her Reply that the recommendation to transfer should be reversed "as that determination was based on there being no personal jurisdiction over General Electric." (D.E. No. 157 at 2).  In light of the discussion above, the Court sees no reason to depart from Judge Mannion's well-reasoned recommendation.  Thus, the Court will sever the claims against General Electric and transfer this portion of the case to the Southern District of West Virginia, where Plaintiff's primary counsel practices and where Mr. McClung lived and developed the illness at issue in this case.  *See* 28 U.S.C. § 1631; Fed. R. Civ. P. 21; *White v.*

*ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999); *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.3d 539, 544 (3d Cir. 1985).

### B.    The Boeing R&R

#### 1.    Personal Jurisdiction Over Boeing

Plaintiff's Opposition to Boeing's motion to dismiss asserted that the Court had both general and specific personal jurisdiction over Boeing.  (*See* D.E. No. 59 at 10).  Judge Mannion found that Plaintiff had failed to prove either theory of jurisdiction.  (Boeing R&R at 10 & 13).  Although Plaintiff objects only as to Judge Mannion's specific jurisdiction findings (*see* D.E. No. 151-1 at 10 (citing Boeing R&R at 11–13)), the Court addresses both theories below.

#### a.    General Jurisdiction

Judge Mannion found that "Boeing's activities in New Jersey are not sufficient to maintain an exercise of general jurisdiction" because New Jersey is neither Boeing's place of incorporation nor its principal place of business.  (*See* Boeing R&R at 9–10).  Particularly, Judge Mannion noted that "even resolving each dispute in [Plaintiff's] favor, Boeing's commercial activities within New Jersey are relatively trivial in comparison to its total operations."  (*Id.* at 9).  Thus, Plaintiff "failed to establish that Boeing is 'essentially at home' in New Jersey."  (*Id.* at 10 (citation omitted)).

Plaintiff does not object to these findings.  (*See generally* D.E. No. 151).  After carefully reviewing the parties' submissions, the Court agrees with Judge Mannion's well-reasoned analysis.  Consequently, the Court adopts this portion of the Boeing R&R.

#### b.    Specific Jurisdiction

As with the GE R&R, Plaintiff argues that the Boeing R&R applied the incorrect standard, disregarded the competent evidence, and resolved disputed issues of fact in favor of Boeing.  (*See* D.E. No. 151-1 at 10 & 12).  The Court notes that although the Boeing R&R appears to apply the

prima facie standard (*see* Boeing R&R at 12), Judge Mannion also concluded that Plaintiff "failed to meet her 'burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction'" (*Id.* (citing *Walburn*, 2008 WL 852443, at *4). However, the Court finds that even if the Boeing R&R incorrectly applied the preponderance standard the error was harmless, because Plaintiff failed to make a prima facie showing of specific jurisdiction. Consequently, the Court modifies this portion of the Boeing R&R to the extent it relied on the preponderance standard, but adopts Judge Mannion's ultimate conclusion that Plaintiff failed to establish a case of specific personal jurisdiction over Boeing.

As with General Electric, the Amended Complaint asserts, in conclusory fashion, that Boeing "mined, manufactured, sold, purchased, marketed, installed, and removed asbestos or asbestos containing products," which came into contact with Mr. McClung. (D.E. No. 81 at 3, ¶ 4). Plaintiff then proceeds to cite to "a litany of claims against Boeing and the other Defendants, without differentiating among them, but does not allege that any of these acts occurred in New Jersey." (Boeing R&R at 10; *see generally* D.E. No. 81). As Judge Mannion explained, "[t]he only reference in the Amended Complaint between Boeing and New Jersey is that Boeing 'individually and as a successor to McDonnell Douglas Corporation[7] . . . was doing business in the state of New Jersey.'" (Boeing R&R at 10 (quoting D.E. No. 81 at 3, ¶ 4) (footnote added)).

Plaintiff's briefing was equally deficient, spending several pages discussing the intricacies of the relatedness element, requesting that the Court apply the substantial connection test, and confining the relevant argument to four conclusory sentences devoid of any citations to the record. (*See* D.E. No. 59 at 11–15). The core of Plaintiff's argument is the following:

> Applying *Walden*, here because the pieces of the aircraft that

---

[7]     In 1967, the McDonnell Aircraft Corporation merged with Douglas Aircraft Company, forming the McDonnell Douglas Corporation ("McDonnell Douglas"). (D.E. No. 53-1, Ex. D ¶ 3). In 1997, McDonnell Douglas became a wholly owned subsidiary of Boeing, and on January 1, 2010, it ceased to exist. (*Id.* ¶ 4).

> exposed to [sic] Mr. McClung were purchased and possessed by
> McDonnell Douglas in New Jersey [sic].  Hundreds of pages of
> invoices and purchase orders exist between Johns Manville and
> Boeing's predecessor during the relevant time period.  Additionally,
> as discussed *supra*, portions of the F-4 engine were brought to New
> Jersey for testing.  These contacts satisfy these requirements.

(*Id.* at 14 (citations omitted)).  In other words, it again appears that Plaintiff improperly expected Judge Mannion and the Court to wade through the entire record and draft Plaintiff's Opposition for her.  Therefore, for the same reasons discussed above (*see supra* Part III.A.1.b.i), on this ground alone Plaintiff failed to meet her burden to demonstrate the Court's specific personal jurisdiction over Boeing.  *See Slade*, 980 F.2d at 31; *Zimmermann*, 749 F. App'x at 150.

But even assuming Judge Mannion or the Undersigned were required to go "hunting for truffles buried in briefs" and the record, *see Dunkel*, 927 F.2d at 956, Plaintiff still failed to make a prima facie showing of specific personal jurisdiction.  The only Boeing product that Mr. McClung alleged to have worked with or around was the F-4 aircraft while he was stationed in Germany.  (*See* D.E. No. 59 at 4 (citing D.E. No. 59-5 at 22:11–22)).  In fact, Mr. McClung never set foot in New Jersey.  (*See* D.E. No. 53-1, Ex. B at 110:20–111:2).  Boeing explained, with undisputed evidence, that "[f]rom the time of the F-4's initial design development and throughout its entire production life, the aircraft was designed and developed pursuant to Government-issued and/or Government-approved detail design specifications in the" St. Louis, Missouri, and Long Beach, California, areas, where "[t]he main manufacturing facilities for the F-4" were located. (D.E. No. 53 at 5 (citing D.E. No. 53-1, Ex. E ¶ 9)).  Accordingly, none of the development or production of the F-4 aircraft, and none of the alleged exposure giving rise to this action, occurred in New Jersey.

Moreover, as the R&R stated, Plaintiff's statement of facts asserted that Mr. McClung was exposed to asbestos through dust-covered blankets he observed "*on* the [F-4 aircraft] engine" (*see*

D.E. No. 59 at 4 (emphasis added)),[8] "but then only describe[d] how Boeing purchased" asbestos-containing "'insulation' from a New Jersey vendor" (Boeing R&R at 12; *see* D.E. No. 59 at 4–5). Particularly, Plaintiff asserted that documents from Johns Manville's repository show "*[s]ome . . . McDonnell Douglas purchase orders* [which] specifically list insulation purchased for the F-4 aircraft." (*Id.* at 5 (citing D.E. No. 59-7) (emphasis added)). As far as the Court can tell, however, none of these orders and invoices actually indicate that any of this insulation contained asbestos or that it was for the F-4 aircraft. (*See generally* D.E. No. 59-7). And because Plaintiff provided no evidence to support the assertions raised by her brief (*see generally* D.E. No. 59), the Court is left to speculate as to whether any of these purchases is connected to this case.

Plaintiff also mentioned that McDonnell Douglas purchased certain "Thermoflex blankets" from Johns Manville. (*Id.* at 5). But Mr. McClung did not allege asbestos exposure from Thermoflex blankets and Plaintiff did not allege or provide any evidence to show that these blankets were the same kind of insulation blankets that Mr. McClung observed covering the F-4 engines, and which Plaintiff claimed caused his injury.[9] (*See id.* at 4; *see also* D.E. No. 45 at 4).

In her Objection to the Boeing R&R, Plaintiff now asserts that the "Thermoflex blankets" McDonnell Douglas purchased from Johns Manville could have also caused Mr. McClung's injuries. Plaintiff contends that because McDonnell Douglas "accepted the Thermoflex blankets

---

[8]    Plaintiff again included a footnote claiming that "Mr. McClung also identified other products used on the GE engines independently proven to be asbestos containing [sic] products," without identifying these products or providing any citations to the record. (*See* D.E. No. 151-1 at 5 n.4). As explained above, this footnote does not change the Court's analysis. *See supra* note 2.

[9]    Plaintiff's statement of facts in opposition to Boeing's motion proceeds to regurgitate largely all of the statement of facts from Plaintiff's Opposition to General Electric's motion to dismiss. (*Compare* D.E. No. 59 at 6–8, *with* D.E. No. 45 at 4–7). But none of the information discussing General Electric's alleged contacts with New Jersey has any bearing on whether this Court can exercise specific personal jurisdiction over Boeing. *See Walden*, 571 U.S. at 285. The exercise of personal jurisdiction over nonresident defendants depends on each individual defendant's own contacts with the forum state. *Id.* at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King*, 471 U.S. at 475)).

'F.O.B. Manville, NJ,' there is specific jurisdiction as Boeing took possession of asbestos-laden material in New Jersey that was used in the F-4 aircraft." (D.E. No. 151-1 at 14 (citing *DR Music, Inc. v. Aramini Strumenti Musicali S.R.L.*, No. 13-7028, 2014 WL 523042, at *2 (D.N.J. Feb. 7, 2014)).[10] But Plaintiff did not properly assert this argument before Judge Mannion (*see generally* D.E. Nos. 59 & 139), and therefore, has waived it regardless of whether such an argument *could have been* asserted based on the record presented below. *See Anamdi*, 2015 WL 5138648, at *3; *Slade*, 980 F.2d at 31; *Tri-M Grp., LLC*, 638 F.3d at 434.

In any event, even if Plaintiff could establish that Boeing's predecessor purchased component parts on the F-4 aircraft from a vendor in New Jersey and that Mr. McClung encountered those parts while maintaining F-4 aircrafts in Germany, Plaintiff still fails to establish a prima facie case of this Court's specific personal jurisdiction over Boeing.

*First*, Plaintiff has failed to show that Boeing purposefully targeted the forum. Plaintiff contends, without any supporting case law or record cites, that this targeting "was done in spades here as evidenced by the fact that Boeing entered into New Jersey to purchase parts for the F-4 aircraft in New Jersey, which were delivered 'F.O.B. Manville, N.J.'" (D.E. No. 151-1 at 13). But a defendant's mere purchases from a vendor within the forum state are not enough to demonstrate that the defendant purposefully directed its activities at the forum state. *See Porthault NA LLC v. Cadeau Exp. Inc*., No. 09-4431, 2009 WL 4573598, at *4 (D.N.J. Dec. 2, 2009); *see also Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 518 (1923). Rather, "in determining whether a defendant who entered into a transaction with a resident of the forum state should be

---

[10]    In her Reply, Plaintiff argues for the first time that Mr. McClung "worked in tight quarters on an engine compartment and as a result would necessarily be exposed to asbestos products installed by himself and others in his vicinity" and that he "would also be exposed to dust when they had to pull the engine out." (D.E. No. 161 at 6 (citing various portions of Mr. McClung's deposition)). But Plaintiff never raised any of these arguments and allegations, nor did she cite to any of this deposition testimony. (*See generally* D.E. Nos. 45, 59, 139, 150, 151 & 157). Therefore, Plaintiff has waived all of these clearly untimely arguments. *See Tri-M Grp., LLC*, 638 F.3d at 434; *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

subject to personal jurisdiction there, the Court should consider the previous negotiations between the parties, contemplated future consequences of the contract, terms of the contract, and parties' actual course of dealing." *Merco, Inc. v. S. California Edison Co.*, No. 06-5182, 2007 WL 1217361, at *4 (D.N.J. Apr. 24, 2007).

For instance, in *DR Music, Inc.*, the plaintiff provided evidence showing that the nonresident defendant (i) directed emails to the New Jersey vendor with whom it negotiated and entered into a contract in New Jersey; (ii) deposited money into the vendor's New Jersey bank account; and (iii) sent its agent into New Jersey to pick up the purchased goods. 2014 WL 523042, at *2. Based on this activity, the court determined that the defendant had purposefully directed its activities at New Jersey, and accordingly could reasonably expect to be haled into New Jersey court on a breach of contract claim arising from that very contract. *Id.* at *2–3.

By contrast, courts have generally declined to find personal jurisdiction over a nonresident defendant where all the plaintiff offers is evidence that the defendant made purchases in the forum state. *See, e.g.*, *Porthault NA LLC*, 2009 WL 4573598, at *4 ("Purchasing products alone 'does not establish sufficient minimum contacts to permit the exercise of personal jurisdiction over [a] nonresident purchaser.'" (alteration in original) (quoting *Merco, Inc.*, 2007 WL 1217361, at *4)); *Cole v. McGuire Bros. Const.*, No. 05-0678, 2005 WL 3077902, at *4–5 (D.N.J. Nov. 15, 2005) (finding no jurisdiction over nonresident defendant who purchased pipes from a New Jersey vendor, despite the fact that the bills of lading indicated that the pipes were coming from New Jersey). Moreover, the fact that the contract or order invoices provide a F.O.B. designation is of little relevance to this analysis. *See, e.g.*, *Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886, 890–91 (1st Cir. 1977) (holding that shipping terms "should be irrelevant on the issue of whether sufficient minimum contacts . . . allow [the forum state] to exercise jurisdiction" because the effect

of such designations is simply to shift "the cost of shipping and the risk of loss in transit" (citation and internal quotation marks omitted)); *Lakeside Bridge & Steel Co. v. Mountain State Const. Co.*, 597 F.2d 596, 603–04 (7th Cir. 1979) ("That the contract specified 'F.O.B. Sellers Plant Milwaukee Wisconsin' does not establish that the contract required Lakeside to perform its contractual obligations at its Wisconsin plant and does not itself create a contact sufficient to justify the challenged assertion of jurisdiction. . . .").

Here, all that Plaintiff has shown is that Boeing's predecessor purchased "insulation" and "Thermoflex" material F.O.B. from Johns Manville.  Even if this is the case, that alone is insufficient for this Court to find that Boeing purposefully directed its activities at New Jersey. *See, e.g.*, *Porthault NA LLC*, 2009 WL 4573598, at *4.  Nor is it particularly relevant that "Johns Manville wrote to McDonnell Douglas to advise that it would be dedicating 'the most qualified personnel in the Thermoflex Department . . . 100% to the McDonnell F4 program'" (*see* D.E. No. 151-1 at 6 (quoting D.E. No. 151-9)) and that it "had equipment that was 'reserved for the exclusive use of McDonnell Aircraft'" (*see id.* (quoting D.E. No. 151-10)).  For one, Johns Manville's unilateral decisions and activity within New Jersey cannot serve as the basis for satisfying Boeing's minimum contacts with New Jersey.  *See Walden*, 571 U.S. at 284; *Merco, Inc.*, 2007 WL 1217361, at *6.  In fact, the letters cited by Plaintiff support the finding that Johns Manville reached out to Boeing's predecessor, further negating the claim that Boeing purposefully directed its activities at New Jersey.  (*See* D.E. No. 151-10 (Johns Manville quote sent to McDonnell Douglas's St. Louis office stating that "[t]his will confirm prices *phoned to you* by our Mr. R. Meddleton" (emphasis added)); D.E. No. 151-9 (Johns Manville settlement offer sent to McDonnell Douglas's St. Louis office)); *see also, e.g.*, *Porthault NA LLC*, 2009 WL 4573598, at *4 (finding no jurisdiction over non-resident defendant who made purchases from New Jersey

24

vendor when vendor contacted the non-resident defendant in Nevada to develop the contractual relationship).

*Second*, even if Plaintiff could establish that Boeing purposefully targeted New Jersey, Plaintiff also fails to show that her claims arise out of or are related to Boeing's (or McDonnell Douglas's) purchases in New Jersey.  Plaintiff summarizes her relatedness argument as follows: "because (1) Mr. McClung developed mesothelioma (a disease that is solely caused by exposure to asbestos); (2) the Thermoflex blankets contained asbestos; and (3) Boeing purchased and accepted delivery of the Thermoflex blankets in New Jersey, Boeing's contacts with New Jersey directly caused Mr. McClung to be exposed to asbestos."  (D.E. No. 151-1 at 14).  But Plaintiff conflates the tort liability analysis with the personal jurisdiction analysis, ignoring that "the relatedness inquiry cannot stop at but-for causation" because but-for causation alone "is vastly overinclusive in its calculation of a defendant's reciprocal obligations."  *O'Connor*, 496 F.3d at 322.  For instance, assuming the purchases of insulation and Thermoflex established Boeing's purposeful contacts with New Jersey, arguably Boeing (or its predecessor) could have reasonably expected to be haled into New Jersey court on a breach of contract claim arising from those purchases (e.g., if Boeing neglected to pay for the products).  It is far less clear, however, that the mere purchasing of insulation and Thermoflex material constitutes a contact "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable" on Plaintiff's tort claims allegedly arising from Mr. McClung's exposure to a military aircraft while stationed in Germany. *See O'Connor*, 496 F.3d at 323.  Despite having at least three bites at this apple, Plaintiff has not provided any arguments or any case law addressing this second part of the Third Circuit's relatedness test, much less anything supporting the exercise of specific personal jurisdiction in the context of this case.  (*See* D.E. Nos. 59, 139, 151-1 & 161).  And because it is not the Court's job

to write Plaintiff's arguments, the Court sees no reason to engage in a complex jurisdictional analysis without the benefit of proper briefing. Consequently, Plaintiff has failed to make a prima facie case of specific personal jurisdiction over Boeing.

### 2.  Sever and Transfer to the District of Delaware

Having determined that the Court does not have personal jurisdiction over Boeing, Judge Mannion held that "it is in the interest of justice not to dismiss the Amended Complaint, but instead sever the claims against Boeing and transfer the case to the District of Delaware." (Boeing R&R at 13). Plaintiff does not raise any objections specifically directed at this portion of the Boeing R&R (*see generally* D.E. No. 151-1 & 161), and since the Court finds that it lacks personal jurisdiction over Boeing, the Court adopts Judge Mannion's well-reasoned recommendation. Consequently, the Court will sever the claims against Boeing and transfer this portion of the case to the District of Delaware, where Boeing is incorporated. *See* 28 U.S.C. § 1631; Fed. R. Civ. P. 21.

## IV.  Conclusion

For these reasons, the Court DENIES Plaintiff's Objections and ADOPTS Judge Mannion's recommendations, modifying the R&Rs to comport with the analysis outlined above. General Electric's motion to dismiss for lack of personal jurisdiction is DENIED, but the claims against General Electric are SEVERED and are TRANSFERRED to the Southern District of West Virginia. Similarly, Boeing's motion to dismiss for lack of personal jurisdiction is DENIED, but the claims against Boeing are SEVERED and are TRANSFERRED to the District of Delaware. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**